FILED

DEC 0 4 2019

MICHAEL GANS
CLERK OF COURT

No. 19-**3576**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## IN RE DANIEL LEWIS LEE,

### Movant.

## MOTION FOR LEAVE FOR AUTHORIZATION TO FILE A SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

### THIS IS A CAPITAL CASE

### EXECUTION SCHEDULED FOR DECEMBER 9, 2019 AT 8:00 AM EST[1]

AMY GERSHENFELD DONNELLA
Assistant Federal Public
   Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 641-6103
Amy_Donnella@fd.org

GEORGE G. KOUROS
Assistant Federal Public
   Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

Counsel for Daniel Lewis Lee

RECEIVED

DEC 0 4 2019

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

---

[1] Mr. Lee has not filed a stay request with this motion because his execution has been enjoined in a separate proceeding. *See* Order Granting Motion for Preliminary Injunction, *In re In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,* No. 19-mc-145, Dkt. 51 (D.D.C. Nov 20, 2019).

# TABLE OF CONTENTS

Introduction ................................................................. . 1

I.     For his § 2255 Motion to be authorized, Mr. Lee must make a prima Facie showing that would warrant fuller exploration in the district court ................................................................. .6

II.     Mr. Lee can make a prima facie showing that he meets the requirements of 28 U.S.C. § 2255(h)(1) ........................................ . 9

     A.     Mr. Lee's claim is based on newly discovered evidence .............. . 9

     B.     The Government violated its *Brady* obligations ........................... 14

     C.     Mr. Lee's allegations constitute a prima facie showing that no reasonable factfinder would have found him guilty of the underlying offense ........................................................ 14

         1.     In light of the suppressed evidence, Mr. Lee has established a prima facie case that his jury could not have found an enterprise existed at the time of the Mueller murders ........................................................ 16

         2.     Mr. Lee has also established a prima facie case that the jury could not have found that he entered into an agreement for pecuniary gain with an enterprise .............. 18

Conclusion ........................................................ 20

Statement Regarding Required Information Pursuant to Eighth Circuit Local Rules 22A(c) & 22B(a) .................................................. 21

Certificate of Service ........................................................ 23

i

Movant Daniel Lee respectfully asks this Court to authorize filing of the attached Motion to Vacate Conviction Under 28 U.S.C. § 2255(h)(1).[1] In this successive § 2255 Motion, Mr. Lee asserts a claim that the Government's suppression of evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) undermines the fundamental basis for federal murder charges in this case. This evidence was never disclosed at trial, direct appeal, or during post-conviction proceedings, despite multiple defense requests, and has only recently been disclosed to Mr. Lee. Because he can make a prima facie showing that his claim deserves further encouragement, this Court should authorize his attached motion.

**Introduction**

In September of 1997, Daniel Lee and Chevie Kehoe were charged in Arkansas state court with the murders of William Mueller, Nancy Mueller, and Sarah Powell. By December of that year, the United States Attorney's Office in the Eastern District of Arkansas had taken over the case and sought a federal indictment. To create federal jurisdiction, the prosecutors asserted that Mr. Lee and Mr. Kehoe had committed several crimes as part of a Racketeer Influenced and Corrupt Organizations (RICO) Act enterprise, 18 U.S.C. §§ 1961 and 1962, and

---

[1]  The provisions of 28 U.S.C. § 2244(a), (b)(3) and (b)(4) are the only provisions of the statute that apply to federal prisoners who have brought their motions under § 2255. All other provisions of § 2244 apply only to state prisoners who assert post-conviction claims pursuant to § 2254.

1

Appellate Case: 19-3576    Page: 3    Date Filed: 12/04/2019 Entry ID: 4858132

had murdered the Muellers on January 11, 1996, in violation of the Violent Crimes in Aid of Racketeering Act ("VICAR"), 18 U.S.C. § 1959, for purposes related to that enterprise.

The proof the Government needed to convict Mr. Lee of VICAR murder was much more involved than that needed for state charges.[2] Beyond establishing the elements of murder alone, the Government also had to prove that Mr. Lee was hired to commit the murders by a VICAR enterprise -- *i.e.*, a group of individuals, associated in fact, that "operate[d] as a continuing unit that function[ed] with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009).[3] According to the Government, the enterprise that hired Mr. Lee to commit the VICAR murders consisted of Chevie Kehoe; Chevie Kehoe's father, Kirby;[4] Chevie's brother, Cheyne; and a man named Faron Lovelace.[5] The alleged enterprise

---

[2]  The Government relied on the "murder for hire" provision of VICAR to prosecute Mr. Lee: "Whoever, *as consideration* for a promise or agreement to pay, anything of pecuniary value *from an enterprise* engaged in racketeering activity … murders…any individual in violation of the laws of any State, … shall be punished –(1) for murder, by death or life imprisonment, or a fine under this title, or both." 18 U.S.C. § 1959(a) and (a)(1) (emphasis added). The statute contains an alternate basis for finding criminal liability, which was used to prosecute Chevie Kehoe – that the crime was committed to maintain his position within the enterprise.  See Tr. 6823.

[3] *See also United States v. Turkette*, 452 U.S. 576, 583 (1981).

[4] In this pleading, Kirby and Cheyne Kehoe will be referred to by first name to distinguish them from Chevie Kehoe.

[5]  While an individual can constitute an enterprise for purposes of RICO crimes (see 18 U.S.C. § 1961(4), the same does not hold true for VICAR.  Under VICAR, an "'enterprise' includes any partnership, corporation, association, or other legal

2

Appellate Case: 19-3576     Page: 4     Date Filed: 12/04/2019 Entry ID: 4858132

operated under the moniker of the APR[6] and purportedly existed for the purpose of promoting white supremacist, anti-government ideals.

Kirby Kehoe and Mr. Lovelace were indicted in the federal case as co-defendants and charged with crimes related to the RICO enterprise. Cheyne, because of his cooperation with the Government, was never charged, although the Government argued to the jury that he was an unindicted co-conspirator.

By the time of trial, only Chevie Kehoe and Mr. Lee were still facing prosecution. The Government dismissed charges against Mr. Lovelace who was already facing a death sentence in Idaho. Less than three weeks before trial, Kirby Kehoe entered a change of plea in exchange for his cooperation with the Government.[7]

---

entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, the activities of which affect, interstate . . . commerce." 18 U.S.C. § 1959(b) (2). While Chevie alone may have constituted an enterprise for RICO purposes, he alone could not constitute an enterprise under VICAR. Thus, even if it were proved that Chevie had paid Mr. Lee as consideration for committing the murders, standing alone, this would not prove that Mr. Lee was paid by an enterprise. *United States v. Rolett*, 151 F.3d 787, 790 (8th Cir. 1998); *United States v. Andino*, 101 F. Supp. 2d 171, 175 (S.D.N.Y. 2000).

[6] The Government alternately suggested that APR stood for Aryan People's Republic and Aryan People's Resistance.

[7] Despite the cooperation agreement, Kirby never testified and yet the Government still filed a 5K1 asking both for a sentence less than 45 months and that the sentence run concurrent with the sentence he was already serving. Kehoe Sentencing at 37-38 (Excerpt attached as Exh. E). The judge, astounded by the Government's plea for leniency, rejected the Government's request:

3

Appellate Case: 19-3576    Page: 5    Date Filed: 12/04/2019 Entry ID: 4858132

Ultimately, Mr. Lee and Chevie Kehoe were jointly tried and convicted of conspiring to violate and violating the RICO statute and of the three VICAR murders. In order to convict on the VICAR counts, the jury had to agree that an "enterprise" existed at the time of the murders. 18 U.S.C. § 1959(a)(1) and (b)(2). To establish this enterprise, the Government alleged that Mr. Kehoe had started the APR with the purpose of creating a white-separatist nation. Mr. Kehoe was the alleged leader and, according to the Government, the criminal activities of the enterprise, prior to the Mueller murders, consisted of a series of crimes committed by varying combinations of Kirby Kehoe, Cheyne Kehoe, Chevie Kehoe, and Faron Lovelace.

In addition to proving that the enterprise existed, the Government had to connect it to the Mueller homicides. As noted at n. 2, *supra,* the Government's theory was that Mr. Lee was guilty of the VICAR counts because the enterprise had agreed to pay him something of pecuniary value as consideration for committing the murders, and Chevie Kehoe was guilty because he had committed the murders to maintain his position in the enterprise. Tr. 6823

---

He is the substantial beneficiary of the entire prosecutorial process. This sentence of 44 ½ months, considering the nature of the charged crimes here, is so minimal that it doesn't – I see no possible basis for running it concurrently…

*Id*. at 40.    Mr. Lee has yet to learn the reason Kirby received such treatment.

4

As noted above, the prosecution additionally alleged that the two defendants had committed a number of racketeering acts in violation of RICO. While they were both convicted of the VICAR murders, engaging in a pattern of racketeering activities under RICO, and conspiracy to violate RICO, Mr. Lee was acquitted of the only act he was accused of that was not associated with the January, 1996, offense against the Mueller family –  the bombing of the Spokane City Hall in the spring of 1996. Mr. Kehoe was also acquitted of the City Hall bombing, as well as the August, 1995, murder of Jeremy Scott, and the spring of 1996 murder of Jon Cox. Following those verdicts, in separate penalty phase hearings, the jury sentenced Mr. Kehoe to life without possibility of release and sentenced Mr. Lee to death for each of the three murders pursuant to the VICAR statute.[8]

Mr. Lee's counsel have only recently discovered evidence that repudiates the Government's case on the VICAR counts. Unbeknownst to Mr. Lee's trial lawyers, both Cheyne and Kirby Kehoe had repeatedly and vehemently informed the Government prior to trial that (a) no enterprise existed at the time of the Mueller murders; and (b) no enterprise, and no one acting on behalf of any enterprise,

---

[8] The Arkansas prosecutors were compelled by Main Justice to proceed with a penalty phase hearing for Mr. Lee despite their attempt to drop death after the far more culpable Chevie Kehoe was sentenced to life imprisonment. At the time, the U.S. Attorney polled the lawyers, the case agents and the victims, and all agreed with a sentence of life without parole for Mr. Lee. Doc. 824 (Tr. May 10, 1999), Doc 827 (Tr. June 29, 1999). Despite the ultimate verdict, all of these people continue to believe that Mr. Lee should receive a life sentence.

5

Appellate Case: 19-3576     Page: 7     Date Filed: 12/04/2019 Entry ID: 4858132

entered into an agreement with Mr. Lee to commit murder.[9] This information, had it been disclosed, would have fundamentally altered Mr. Lee's trial because absent these predicate elements, he could not have been convicted of the murders in federal court under the VICAR statute. Although he could have been prosecuted by Arkansas authorities under state murder statutes, the elements of this federal crime would not have been satisfied.

Because this evidence was never disclosed to Mr. Lee and has come to light only recently (and only after his initial § 2255 proceedings were concluded), he must seek authorization from this Court to have his claim heard.  Inasmuch as no reasonable factfinder could have found him guilty of the VICAR crimes if this information had been disclosed, because the necessary elements could not be proved in light of it, Mr. Lee respectfully requests that this Court authorize the attached successive motion and allow further proceedings on his claim that his conviction was obtained in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

I.      **For his § 2255 Motion to be authorized, Mr. Lee must make a prima facie showing that would warrant fuller exploration in the district court.**

---

[9] Mr. Lee has attached to this Motion the declarations of Cheyne Kehoe and Kirby Kehoe, obtained on November 1, 2019, and November 3, 2019, respectively. See Exh. A ("Declaration of Cheyne Kehoe") & Exh. B ("Declaration of Kirby Kehoe").

6

Appellate Case: 19-3576    Page: 8    Date Filed: 12/04/2019 Entry ID: 4858132

Mr. Lee's claims should be authorized to proceed in district court if they are based on "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h) (1).[10]

A grant of authorization by this Court to file a successive motion is a preliminary determination: it is considered "tentative" because it merely allows the district court to more fully consider whether the requirements for filing a second motion are met. *Johnson v. United States*, 720 F.3d 720, 720-21(8th Cir. 2013). As such a movant must make not a definitive showing of innocence, but rather a "prima facie showing." *Id.* (citing *Bennett v. United States*, 119 F.3d 468 (7th Cir.

---

[10] Although § 2255(h) refers to the authorization process of § 2244, the language differs from § 2254 authorizations in several ways. First, § 2255 lacks the bar on same-claim successors found in § 2244(b)(1). It also has no requirement that a movant show that the newly discovered evidence was previously unavailable through the exercise of due diligence. Cf. § 2244(b) (2) (B)(i). These differences may reflect the fact that § 2255 is the first and only opportunity for pursuing post-conviction relief for federal inmates as well as the lack of concerns about federal-state comity present in § 2254 cases. Regardless, these issues are not in play in Mr. Lee's case as he has never before presented these claims in a prior application because they were previously unavailable to him due to the Government's suppression. *See McDonald v. Bowersox*, 125 F.3d 1183, 1186 (8th Cir. 1997) (evidence previously unavailable if it could not have been raised in prior petition) and *Banks v. Dretke*, 540 U.S. 668, 696 (2004) (No burden on petitioner to discover concealed evidence because "[a] rule thus declaring "prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process").

Appellate Case: 19-3576    Page: 9    Date Filed: 12/04/2019 Entry ID: 4858132

1997)). "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re McDonald*, 514 F.3d 539 (6th Cir. 2008) (quoting *Bennett*, 119 F.3d at 469). This is a "lenient" and "not a difficult standard to meet." *In re Lott*, 366 F.3d 431, 432-33 (6th Cir. 2004); *see also In re Morris*, 328 F.3d 739, 741 (5th Cir. 2003) (Higginbotham, J. concurring) (even while "dubitante" on merits, under *Bennett* judge should not "dissent from an order allowing the district court to make a more informed judgment than is available to us, as a second gate to leave to file a successive writ.").

Furthermore, this Court's initial review of an authorization request does not consider whether the movant actually qualifies for relief on his claims of error. *See In re Pendleton*, 732 F.3d 280, n.1 (3rd Cir. 2013) (quoting *Goldblum v. Klem,* 510 F. 3d, 219 (3rd Cir. 2007) ("'[S]ufficient showing of possible merit' in this context does not refer to the merits of the claims asserted in the petition. Rather, it refers to the merits of a petitioner's showing with respect to the substantive requirements of [authorization].")).

Mr. Lee must therefore make a preliminary or prima facie showing that he meets the requirements of 28 U.S.C. § 2255(h)(1), namely that his motion contains "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no

8

reasonable factfinder would have found [him] guilty of the offense." Mr. Lee's evidence clearly meets this standard.

II. **Mr. Lee can make a prima facie showing that he meets the requirements of 28 U.S.C. § 2255(h) (1).**

A. **Mr. Lee's claim is based on newly discovered evidence.**

The information contained in the declarations of Cheyne Kehoe, dated November 1, 2019, and Kirby Kehoe, dated November 3, 2019, was never disclosed to Mr. Lee's lawyers but goes to the heart of the prosecution's case. A048, A058.[11] At trial, virtually all of the evidence introduced about the APR showed that it had come into existence (if at all) no earlier than the spring of 1996, several months after the Muellers were murdered. See *infra*.

The information in Cheyne's and Kirby's declarations demonstrates affirmatively that there was no "enterprise" prior to the Mueller murders. In his declaration, Kirby, Chevie's father, explains that he had been interviewed numerous times by law enforcement in the months and weeks prior to the trial during which he told them there was no enterprise.

> I had a meeting – one of many – with the prosecution prior to Chevie's trial. The prosecutors wanted me to testify to the structure and my involvement in an organization, "APR." I kept telling them there was no such organization or any other. I never did things as part of an organization or on an ongoing basis.

A061, ₧ 15.

---

[11] Citations to the attached Appendix are designated "A[bates stamp #]."

9

Kirby also said that "[t]he prosecutors were extremely angry and frustrated that I wouldn't testify that we were part of an organization or that Chevie operated in or with a group or 'enterprise.'" A062, ⁋ 16.

Kirby told federal agents that the crimes his son Chevie committed were

something to do in the moment for financial gain, not something planned out. I told them Chevie had fantasies to do this or that, but he committed crimes of opportunity to get money for himself, have cars and other things. Chevie committed crimes because he was too lazy to work.

A061, ⁋ 14.

Kirby also explained that when federal agents asked him whether he or any of his sons were associated with a group, he told the agents that:

none of us were part of any group. My kids were never part of any organization…Chevie talked a lot and he was sort of trying to find himself and he wanted to do exciting things but he never actually acted as part of an organization or group.

*Id.*, ⁋ 13.

Moreover, there was little opportunity for any "enterprise" to make plans in the lead up to the Mueller murders. Kirby had no contact with Cheyne in the months prior to it, and none with Chevie until Chevie dropped in on him unexpectedly in early January 1996, with Mr. Lee in tow.

Critically, far from endorsing a payment to Mr. Lee to commit a criminal act, during Chevie's visit with Kirby, just days prior to the purported January 11,

10

1996 homicides, Kirby explicitly told Chevie to disassociate himself from Mr. Lee.

He "made all of this clear to" law enforcement:

> I never trusted strangers and I didn't trust Lee. I told Chevie to not associate with him and leave him alone. He wasn't family, I didn't know him, I didn't approve of Chevie being with him.
>
> I did not want Chevie traveling with Lee or telling Lee anything about any members of our family or working with him in any way. I have never approved of including people from outside our family in any kind of business, and I particularly did not trust Chevie's ability to judge people.

A060-61, ¶¶ 10, 11 and 12.

Cheyne Kehoe, a star witness for the Government and also a purported member of this enterprise, lays out a similar timeline in his own declaration. He had little contact with his family from the fall of 1995 until the spring of 1996, and recalls seeing Chevie only a couple of times, none until after the January 11, 1996, the date on which the Mueller murders allegedly occurred. A052, ¶ 17, 18 and 20. The first was in late January or early February; the second, in the spring of 1996, was when Cheyne first met Mr. Lee. A053, ¶ 21.

Cheyne told law enforcement agents many things that contradicted the Government's VICAR case against Mr. Lee. He insisted that Chevie's criminal activity was for his own benefit, not in furtherance of any racketeering enterprise:

> APR was a pipe dream of Chevie's. In his mind only, he fantasized of creating his own area. He liked to talk about it because it *was* a fantasy. But *as I kept telling every law enforcement person I spoke to,*

Appellate Case: 19-3576    Page: 13    Date Filed: 12/04/2019 Entry ID: 4858132

> *Chevie committed his crimes so that he could just get things for himself.*

A056, ⁋ 33 (emphasis added). He said he had been very clear the APR did not exist:

> *I can't stress enough, as I stressed during my interviews with the government, that there was no "organization."* Chevie committed his crimes for himself. None of the rest of us had any relationship with each other, except that I was Chevie's brother and Kirby was my dad. *Danny wasn't some member of any organization with us; neither was Faron [Lovelace].* They were both people Chevie could manipulate because they had nothing else and nowhere else to go.

*Id.*, at ⁋ 34 (emphasis added). Cheyne added that he would not have been part of any group Chevie was dreaming of creating because he did not adhere to Chevie's beliefs. He told agents:

> I never would have taken part in those crimes and didn't share the beliefs of the Christian Identity or the Aryan Nation or any other white supremacy group. I knew about them, I heard talk about them, but that wasn't my belief system. I would never have committed crimes to support those beliefs.

A055 at ⁋ 29.[12]

Like Kirby, Cheyne could not have endorsed or authorized Chevie to pay

---

[12] This is consistent with Faron Lovelace's own statements during his trial in Idaho for the capital murder of Jeremy Scott (a crime also alleged as a predicate act in this case). *See State v. Lovelace*, No. CRF-96-1506 at 447 (Dist. Ct. 1st Jud. Dist. Sept. 9, 1997) (A104) ("I'm facing a couple of lifes and thirty years, I believe, by the Federal government. I'm under investigation today for possible – the Rico[sic] investigation, which is organized crime. *I've told at least one investigator it's ridiculous*.") (emphasis added).

Appellate Case: 19-3576     Page: 14     Date Filed: 12/04/2019 Entry ID: 4858132

Mr. Lee to commit the Mueller murders, and told law enforcement repeatedly he
knew nothing about them ahead of time:

> . . . [I] would never have gone along with the idea of killing the
> Muellers and I would have done everything I could to discourage
> Chevie from doing it if I'd known he was planning it.

A054-55, ⁋ 28 and 32.

Counsel have also recently discovered transcripts in a subsequent sentencing
of Kirby Kehoe in Arizona federal court that reinforce these statements. Those
records make clear that Kirby has not wavered on the fact that he was never
involved in any enterprise with Chevie Kehoe (or any others) or in an "Aryan
People's Republic." *See* Arizona Sentencing Transcript of Kirby Kehoe at A075-
76, A079, A80-81. Consistent with his declaration, his Arizona lawyer informed
the court that he "has vigorously objected to this characterization each time he has
been in court." *Id.* at A075.

Even the Government's own characterization of the evidence at that hearing
corroborates Mr. Lee's claims here: according to the Government, the Aryan
People's Republic "was not a specific organized group, but it was a fledgling.
[Kirby] was trying to get it to be a new White supremacist group that was
recognized." A082 at 18.  The Government's assertion in federal court in Arizona
directly contradicts the heart of the indictment against Mr. Lee, *i.e.* that he was part
of a specific organization that was created prior to January 1996.

13

Appellate Case: 19-3576     Page: 15     Date Filed: 12/04/2019 Entry ID: 4858132

**B. The Government violated its *Brady* obligations.**

At each stage in the previous litigation, the Government (and its agents) failed to disclose the information provided by Cheyne and Kirby. Every prior defense request for exculpatory evidence was rebuffed. In April of 1998, the district court entered a standing pretrial order directing the Government to provide defense counsel with any *Brady* evidence on a continuing basis. Doc. 145 at 3. This request was renewed after the Government amended its pretrial notice of intent to seek a death sentence. Doc. 344 at 4. During § 2255 proceedings Mr. Lee again requested any *Brady* material concerning guilt or punishment. Evidence undermining necessary elements of an offense is unquestionably exculpatory. At no juncture in the proceedings did the Government disclose this crucial information.

**C. Mr. Lee's allegations constitute a prima facie showing that no reasonable factfinder would have found him guilty of the underlying offense.**

To obtain authorization to file a second § 2255 motion, Mr. Lee must establish before this Court a prima facie case sufficient to warrant fuller exploration in the district court. *Woods v. United States,* 805 F.3d 1152, 1153 (8th Cir. 2015). The Court does "not need to find that given the alleged constitutional violation no reasonable factfinder would have found [movant] guilty of the underlying offense; instead, [the Court] simply must determine whether there are

14

Appellate Case: 19-3576     Page: 16     Date Filed: 12/04/2019 Entry ID: 4858132

'sufficient allegations' together with 'some documentation' so as to require a district court to engage in additional analysis in order to ascertain whether but for the constitutional error, no reasonable factfinder would have found [movant] guilty of the underlying offense." *In re McDonald*, 514 F.3d 539 (6th Cir. 2008).  Mr. Lee is able to do that here.

The plain language of the VICAR statute requires the Government to prove each of the following elements;[13] a failure of proof of either one of them necessitates a finding of "not guilty" of the federal VICAR crime:

<u>First</u>, an enterprise had to have existed at the time of the Mueller murders.

<u>Second</u>, any agreement into which the defendant entered must have been with a person acting on behalf of the enterprise, not merely with an individual acting in his or her personal capacity. *See United States v. Rolett*, 151 F.3d 787, 790 (8th Cir. 1998) (Government must prove enterprise and "that the *enterprise* gave or promised consideration to appellant and Davidson to commit a murder, or to conspire to commit a murder.") (emphasis added).[14]

---

[13] See n. 3, *supra.* The statute also requires finding that the enterprise engaged in racketeering and that an agreement by the enterprise to pay the defendant was made in contemplation of his committing a specific crime.  See 18 U.S.C. § 1959.
[14] *See also United States v. Andino*, 101 F. Supp. 2d 171, 175 (S.D.N.Y. 2000) ("[G]overnment presented its case on the theory that Andino expected to be paid, and was paid, by John Castro. It was thus necessary for the government to prove that John Castro acted on behalf of [the enterprise] when he gave money to Andino. Put differently, in order for the payment to have been received *from the*

**1. In light of the suppressed evidence, Mr. Lee has established a prima facie case that his jury could not have found an enterprise existed at the time of the Mueller murders.**

The first burden at trial on the Government was to establish that an enterprise existed at the time of the alleged VICAR crimes. The Supreme Court has defined the essential conditions under which a group of people can constitute an association-in-fact enterprise, whether for VICAR or RICO purposes. It

> must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in *Turkette*, an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." [*United States v. Turkette*,] 452 U.S. [576], at 583, 101 S.Ct. 2524 [1981].

*Boyle v. United States*, 556 U.S. 938, 946 (2009). While such an association-in-fact need not have a hierarchical structure, it must be a "continuing unit that functions with a common purpose." *Id.* at 948.

The Government's theory was that only five people constituted the alleged RICO enterprise in this case: Mr. Lee, Chevie Kehoe, Cheyne Kehoe, Kirby Kehoe and Faron Lovelace. Of these five, only Cheyne testified at trial; although Kirby and Faron had spoken with prosecutors and law enforcement agents on a number of occasions, neither presented any evidence to the jury.

_____

*enterprise*, Castro must have been acting as an agent of the enterprise, not in his personal capacity, when he made the payment to Andino.") (emphasis added).

16

Appellate Case: 19-3576     Page: 18     Date Filed: 12/04/2019 Entry ID: 4858132

The bulk of the proof the Government used to establish the existence of the APR demonstrated that it only came into existence months after the Mueller family was killed. This included testimony from Cheyne and a cellmate of Chevie's who said at trial that they'd heard Chevie talk about his "plans" to form the APR only long after the January, 1996, Mueller murders, Tr. 4040, 4113; two witnesses who testified that Mr. Lee had made efforts to get Jon Cox, a skinhead friend of his, to move from California to Washington in the summer of 1996, Tr. 2801, 4416; testimony about the Spokane City Hall bombing in spring of 1996 (of which both Chevie and Mr. Lee were acquitted); a letter written by Chevie to Mr. Lee, dated January 14, 1998, which included an insignia attributed to the purported APR, Tr. 5551; a letter found in Chevie's cabin, written by Chevie in 1997 to his wife on post-it notes, that also included the APR insignia. Tr. 3267;[15] and testimony of Mr. Lee's cellmate from 1997 who gave him a tattoo with the APR insignia (See also, VICAR § 2255 Motion at A040 et seq.)

The only proof the Government put on to suggest the existence of an enterprise *prior* to the murders was the fact that each of the five men had belonged to either the Christian Identity movement or the Aryan Nations,[16] visited

---

[15] Gloria Kehoe, Chevie's mother, testified at length, implicating Chevie and Mr. Lee in a host of crimes. She never mentioned the APR. Tr. 4947 et seq.

[16] Aryan Nations, a neo-Nazi organization, was founded in the 1970's and is not to be confused with the APR, Chevie's own later alleged organizational aspiration.

17

communities tied to those movements, or had read *The Silent Brotherhood,* a book describing the failed exploits of a well-known white separatist. But while Christian Identity and Aryan Nations espoused deplorable racist and anti-Semitic tropes, there was no suggestion that the Kehoes or Mr. Lovelace was trying to raise money or collect arms for them.

Cheyne's and Kirby's previously undisclosed statements give the lie to the theory that any enterprise existed to support these or any other factions. They both stressed in interviews with the government that there was no organization and that Chevie had committed crimes for his own personal gain. Moreover, there was no continuity to this group. Kirby instructed Chevie not to associate with Mr. Lee. Mr. Lee never met Cheyne or Mr. Lovelace until after the homicides. Cheyne did not trust Mr. Lovelace and had little association with him. Mr. Lovelace was essentially discarded by Chevie after the summer of 1995. A050-51, ¶¶ 9, 12-16, and A060, ¶¶ 10-11.

This newly discovered evidence shows that no reasonable factfinder would have found, beyond a reasonable doubt, that an enterprise existed before the Muellers were murdered. And without such a finding, by law, Mr. Lee's VICAR convictions had to fail.

> **2. Mr. Lee has also established a prima facie case that the jury could not have found that he entered into an agreement for pecuniary gain with an enterprise.**

18

Appellate Case: 19-3576    Page: 20    Date Filed: 12/04/2019 Entry ID: 4858132

The second element the prosecution had to establish under VICAR was that Mr. Lee received payment from the alleged enterprise for his role in the Mueller murders. This finding necessarily requires a prior determination that Chevie Kehoe was acting *on behalf of* an enterprise, not in his personal capacity, and that he agreed on behalf of the enterprise to pay Mr. Lee as consideration for committing these murders. Thus, it was incumbent on the Government to prove not just that Mr. Lee committed the act of murder, or that he was paid something of pecuniary value for having done so, but that he did so pursuant to an agreement with an enterprise.

The revelations contained in Kirby's and Cheyne's declarations are direct proof that there was no such agreement made on behalf of an enterprise. Neither Cheyne nor Kirby approved of a plan to kill the Muellers and, in fact, would have discouraged Chevie from taking any such actions. Cheyne "never had any discussion with Chevie or anyone else about killing the Mueller family before it happened," A055, ¶ 28, "would never have gone along with the idea of killing the Muellers and … would have done everything [he] could to discourage Chevie from doing it if [he'd] known he was planning it." Id., ¶ 32.

Kirby certainly did not authorize such an agreement. When he saw Chevie in Arizona in early January, 1996, he "told Chevie to not associate with [Mr. Lee] and leave him alone. . . . I didn't approve of Chevie being with him.  I did not want

19

Chevie traveling with Lee or . . . working with him in any way." A060, ¶¶ 10 and 11.

In light of this newly discovered evidence, even if an enterprise existed (which it did not), a jury would have had reasonable doubt whether an enterprise agreed to pay Mr. Lee to kill the Muellers. Absent such proof, Mr. Lee could not have been convicted of the VICAR crimes.

## CONCLUSION

Mr. Lee has newly-discovered evidence, previously withheld by the Government in abrogation of his constitutional right to due process. With this new evidence, no reasonable factfinder could have found Mr. Lee guilty of the VICAR murders. For this reason, Mr. Lee asks this Court to grant him authorization to file a successive motion to vacate or correct sentence pursuant to 28 U.S.C. § 2255.

This 4th day of December, 2019.

/s/ *Amy Donnella*
AMY GERSHENFELD DONNELLA
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 641-6103
Amy_Donnella@fd.org

/s/ *George G. Kouros*
GEORGE G. KOUROS
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

Counsel for Daniel Lewis Lee

20

**Statement Regarding Required Information**
**Pursuant to 8th Circuit Local Rules 22A(c) & 22B(a)**

1. **Grounds for relief:**
   A. First Ground for Relief: Mr. Lee's conviction was obtained in violation of *Brady v. Maryland* because the Government suppressed material exculpatory and impeachment information.

2. **List of all pending litigation in federal or state court:**
   A. *In re: Daniel Lewis Lee*, No. ____ (8th Cir.) (motion for leave for authorization to file successive § 2255 motion)
   B. *Daniel Lewis Lee v. Warden USP Terre Haute, United States*, No. 2:19-cv-00468-JPH-DLP (S.D. IN.) (§ 2241 Petition)
   C. *In re: FBOP Execution Protocol Cases*, No. 19-5322 (D.C. Cir.) (lethal injection challenge)
   D. *In re: FBOP Execution Protocol Cases*, No. 1:19-mc-00145-TSC (D. D.C.) (lethal injection challenge)
   E. *Daniel Lewis Lee v. Barr, et.al.* No. 1:19-cv-03611-TSC (D.D.C.) (First and Fifth Amendment Challenge)

3. **Captions and case numbers of all previous habeas proceedings, including appeals to this Court and certiorari petitions to the United States Supreme Court, and citations to any published state or federal court opinions:**
   A. Motion to Vacate Pursuant to 28 U.S.C. § 2255 (filed June 26, 2006)
      1. *United States v. Daniel Lee*, No. 4:97-cr-243 (E.D. Ark.)
         Relevant opinions:
         a. Docket No. 1163 (E.D. Ark. Aug. 8, 2008) (Order denying § 2255 motion)
         b. Docket No. 1189 (E.D. Ark. Dec. 22, 2010) (Order denying motion to reconsider pursuant to Fed. R. Civ. P. 59)
         c. Docket No. 1249 (E.D. Ark. Mar. 18, 2014) (Order denying motion to reopen judgment pursuant to Fed. R. Civ. P. 60(b))

      2. *United States v. Daniel Lee*, No. 11-1380 (8th Cir.)
         Relevant opinion: 715 F.3d 215 (8th Cir. 2013) (affirming denial of § 2255 motion)

      3. *United States v. Daniel Lee*, No. 14-2843 (8th Cir.)

21

Relevant opinions:

    a. 792 F.3d 1021 (8th Cir. 2015) (affirming denial of Rule 60(b) motion)
    b. 811 F.3d 272 (8th Cir. 2015) (Kelly, J., dissent from denial of rehearing)

4. *Daniel Lee v. United States*, No. 13-10085 (U.S.)
Relevant opinion: 135 S.Ct. 72 (Oct. 6. 2104) (denying petition for writ of certiorari following denial of § 2255 motion)

5. *Daniel Lee v. United States*, No. 15-8942 (U.S.)
Relevant opinion: 137 S.Ct. 1577 (Apr. 17, 2017) (denying petition for writ of certiorari following denial of Rule 60(b) motion)

B. Second-in-time Motion to Vacate Pursuant to 28 U.S.C. § 2255 (filed Sep. 10, 2018)
1. *United States v. Daniel Lee*, No. 4:97-cr-243 (E.D. Ark.)
Relevant opinion: Docket No. 1313 (E.D. Ark. Feb. 26, 2019) (Opinion and order denying § 2255 motion and certificate of appealability)

2. *Daniel Lee v. United States*, No. 19-2432 (8th Cir.)
Relevant opinion: Entry ID: 4848685 (8th Cir. Nov. 4, 2019) (Kelly, J., dissent from denial of certificate of appealability)

**4. The outcome of all previous habeas petitions:**
A. Motion to Vacate Pursuant to 28 U.S.C. § 2255 (filed June 26, 2006): denied
B. Second-in-time Motion to Vacate Pursuant to 28 U.S.C. § 2255 (filed Sep. 10, 2018): denied without prejudice for lack of pre-authorization

**5. Copies of all state or federal court opinions or judgments relating to the conviction and sentence if the opinions or judgments are not available electronically through PACER or Westlaw.**
All aforementioned prior opinions or judgments are available electronically through PACER or Westlaw.

Appellate Case: 19-3576   Page: 24   Date Filed: 12/04/2019 Entry ID: 4858132

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system on December 4, 2019. Per 8th Circuit Rule 22B(b), "The clerk will electronically serve a copy of the application for second or successive habeas petition or section 2255 motion on the appropriate state attorney general or United States attorney." I hereby certify that I served this motion via e-mail upon:

JOHN M. PELLETTIERI
Attorney, U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., N.W., Rm. 1264
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

MICHAEL GORDON
Chief, Criminal Division
U. S. Attorney's Office
Eastern District of Arkansas
Post Office Box 1229
Little Rock, AR 72203-1229
(501) 340-2600
michael.gordon@usdoj.gov

/s/ *George G. Kouros*
GEORGE G. KOUROS
Bar # 420813 (CT)
Attorney for Daniel Lee
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Telephone: (301) 821-0855
Email: George_Kouros@fd.org

Appellate Case: 19-3576    Page: 25    Date Filed: 12/04/2019 Entry ID: 4858132