No. 19-3576

In the
# United States Court of Appeals
for the Eighth Circuit

———————————

DANIEL LEWIS LEE,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

———————————

**RESPONSE OF THE UNITED STATES IN OPPOSITION TO LEE'S
APPLICATION FOR PERMISSION TO FILE A SECOND OR
SUCCESSIVE § 2255 MOTION**

———————————

CODY HILAND
United States Attorney
Eastern District of Arkansas

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................1

STATEMENT.........................................................................................1

    I.     Procedural Overview ........................................................... 1

    II.    Offense Conduct.................................................................5

    III.   Trial and Sentencing .........................................................7

    IV.   Relevant Postconviction Proceedings..............................8

    V.    The Present Motion ......................................................... 10

APPLICABLE LEGAL STANDARDS ...................................................... 12

ARGUMENT ...................................................................................... 14

    A.   Lee Does Not Present Clear and Convincing Evidence of His Innocence.............................................. 14

    B.   Lee Fails to Demonstrate He Acted With Adequate Diligence.................................................................. 17

CONCLUSION..................................................................................... 17

CERTIFICATE OF SERVICE ................................................................. 19

i

# INTRODUCTION

This is a capital murder case with a long history. Defendant Daniel Lewis Lee has obtained extensive review of his conviction and sentence on direct appeal and collateral review. This Court and the district court have repeatedly rejected attempts by Lee to attack his conviction and sentence on direct appeal, on collateral review under 28 U.S.C. § 2255, and in unauthorized successive motions for collateral relief under § 2255. The Supreme Court has also repeatedly denied certiorari. Days before the scheduled date of his execution—which is now stayed—Lee filed the present application seeking authorization to file a successive § 2255 motion raising a new claim. The application should be denied. Lee does not satisfy the gatekeeping requirements for second or successive § 2255 motions, and he fails to demonstrate that he acted with sufficient diligence.

# STATEMENT

## I.     Procedural Overview

In 1999, a federal jury found Lee guilty of committing three capital murders and recommended that Lee receive the death penalty. After the district court (Hon. G. Thomas Eisele) granted Lee's post-trial motion for a new sentencing hearing, *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000), the government appealed, and this Court reversed and reinstated the

1

death sentence, *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied*, 537 U.S. 1000 (2002).[1] This Court subsequently affirmed Lee's conviction and sentence on direct appeal. *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004). The Supreme Court denied certiorari. *Lee v. United States*, 545 U.S. 1141 (2005).

Lee then filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Dkt. 1118.[2] The district court denied the motion and a motion for reconsideration. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008); *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). This Court affirmed. *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), *cert. denied*, 135 S. Ct. 72 (2014).

In September 2013, Lee filed a motion that he titled a motion for relief from judgment under Federal Rule of Civil Procedure 60. The district court (Hon. Leon Holmes, who by then had taken over the case after Judge Eisele's retirement) concluded that it lacked jurisdiction because the motion in

---

[1] While the motion for a new sentencing hearing was pending, this Court granted a petition for a writ of mandamus prohibiting subpoenas to then-Attorney General Janet Reno and then-Deputy Attorney General Eric Holder. *In re United States*, 197 F.3d 310 (8th Cir. 1999).

[2] "Dkt." refers to district court docket entries. "Tr." refers to the consecutively paginated trial transcript. "App." refers to the appendix Lee has filed along with the application presently before the Court.

2

Appellate Case: 19-3576     Page: 4     Date Filed: 12/07/2019 Entry ID: 4859446

substance amounted to a second or successive motion for relief under § 2255 and Lee failed—as required by 28 U.S.C. § 2255(h)—to seek (let alone obtain) precertification from this Court that the motion contained newly-discovered evidence providing compelling proof of his innocence or a new rule of constitutional law made retroactive by the Supreme Court on collateral review. *United States v. Lee*, No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014). This Court affirmed. *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015), and the Supreme Court denied certiorari, *Lee v. United States*, 137 S. Ct. 1577 (2017).

In September 2018, Lee filed another motion for collateral relief under § 2255, and the district court again denied the motion on the ground that it lacked jurisdiction over an uncertified second or successive motion for relief under § 2255. Dkt. 1313. This Court denied Lee's application for a certificate of appealability. *Lee v. United States*, No. 19-2432 (8th Cir.) (Nov. 4, 2019).

In July 2019, the United States set a date to carry out Lee's capital sentence, scheduling his execution for December 9, 2019. Since then, Lee has filed a habeas petition in the Southern District of Indiana, *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.); has challenged the government's execution protocol in the district court for the District of Columbia, *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-143 (D.D.C.); has challenged his clemency

3

proceedings in a lawsuit in the District of Columbia, *Lee v. Barr*, No. 1:19-CV-03611-DDL (D.D.C.); and yesterday filed a motion for relief from judgment in the district court in this case under Federal Rule of Civil Procedure 60(b), Dkt. 1352. Lee has either requested or received a stay of his execution in each of these proceedings.

The district court in the District of Columbia in the execution-protocol case issued a preliminary injunction barring Lee's execution while that litigation proceeds. The government appealed the injunction and also sought a stay or vacatur of the injunction in the court of appeals and then the Supreme Court. The Indiana district court in the habeas case stayed Lee's execution, but the Seventh Circuit vacated the stay yesterday evening. *Lee v. Watson*, No. 19-3399 (7th Cir. Dec. 7, 2019). The district court below (Hon. Kristine G. Baker, who has taken over the case since Judge Holmes's retirement) issued a stay of Lee's execution yesterday evening, Dkt. 1356, and the United States filed a notice of appeal, Dkt. 1357. Also yesterday evening, the Supreme Court denied an application by the United States to stay or vacate the preliminary injunction in the execution protocol litigation. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19A615 (Sup. Ct.) (order entered Dec. 6, 2019). The Court stated that it "expect[s] that the Court of Appeals will render its decision with

4

appropriate dispatch." *Id.* Lee's execution therefore will not proceed on December 9, 2019.

In addition to the above litigation, Lee also filed the present application on December 4, 2019, seeking permission to file a second or successive § 2255 motion attacking his conviction on new grounds. He asserts (Motion 9-14) that newly discovered evidence establishes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). And he contends (Motion 14-20) that he is entitled to assert the claim in a second or successive § 2255 motion because the evidence, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found [him] guilty of the offense." 28 U.S.C. § 2255(h)(1).

## II. Offense Conduct

Lee, Chevie Kehoe (Kehoe), Kehoe's father Kirby Kehoe, Kehoe's brother Cheyne Kehoe, and Faron Lovelace participated in a variety of criminal activities to promote and finance a white supremacist organization known as the Aryan Peoples' Republic, or the Aryan Peoples' Resistance (APR), which Kehoe formed for the purpose of establishing an independent nation of white members of the Christian Identity faith in the Pacific Northwest. *Lee*, 374 F.3d at 641. In June 1995, for example, Kehoe and Lovelace kidnapped and robbed Malcolm and Jill Friedman, Jewish

storeowners in Washington State, and used the proceeds from the robbery to purchase property in Idaho where the group would congregate or live. *United States v. Kehoe*, 310 F.3d 579, 584, 586 (8th Cir. 2002), *cert. denied*, 538 U.S. 1048 (2003). Kehoe recruited Lee into the APR in 1995. *Lee*, 374 F.3d at 641.

In January 1996, expecting to find valuable property, Kehoe and Lee traveled from Washington to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition. *Id.*[3] When Mueller arrived home with his wife Nancy and their eight-year-old daughter Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition. *Id.* at 641-42. After taking weapons worth about $30,000 and $50,000 in cash and coins, Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Lee*, 2008 WL 4079315, at *4. Kehoe and Lee taped rocks to the bodies and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42. Kehoe paid Lee "a thousand dollars and a rifle for his part in the robbery and murders." *Kehoe*, 310 F.3d at 590.

---

[3] Chevie Kehoe and his father Kirby had previously broken into the Mueller home and stolen property in February 1995, while the Muellers were away from their home attending a gun show. *United States v. Kehoe*, No. 97-CR-00243, 2008 WL 4079316, at *2 (E.D. Ark. Aug. 28, 2008).

6

Appellate Case: 19-3576     Page: 8     Date Filed: 12/07/2019 Entry ID: 4859446

## III.   Trial and Sentencing

Lee and Kehoe were charged with conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c); conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); and three capital counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). The government provided notice of its intent to seek the death penalty against both defendants for each of the three murders. *See Lee*, 374 F.3d at 642.[4]

Lee and Kehoe were tried together before a jury. *See Lee*, 2008 WL 4079315, at *2. After a two-month trial, the jury found Lee and Kehoe guilty on all counts. *Id.*

After the guilt phase, separate hearings were held to determine whether each defendant should receive the death penalty for the three capital murders. *See* Tr. 7169-7337 (Kehoe sentencing hearing); Tr. 7367-8022 (Lee sentencing hearing). At Kehoe's sentencing hearing, which took place first, the jury unanimously decided against a sentence of death for each of the three murders and in favor of life imprisonment without the possibility of release. Tr. 7328-

---

[4] Kirby Kehoe pleaded "guilty to conspiring to violate RICO and cooperated with authorities." *Kehoe*, 310 F.3d at 585.

Appellate Case: 19-3576     Page: 9     Date Filed: 12/07/2019 Entry ID: 4859446

37. At a subsequent sentencing hearing for Lee, the same jury sentenced him to death for the three murders. Tr. 8019-22.

## IV. Relevant Postconviction Proceedings

This Court affirmed Lee's and Kehoe's convictions and sentences on direct appeal. *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005); *United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir. 2002), *cert. denied*, 538 U.S. 1048 (2003). As relevant here, the Court rejected arguments by both defendants that the evidence failed to establish the existence of a racketeering "enterprise," a required element for all of their convictions. *See Lee*, 374 F.3d at 647-48; *Kehoe*, 310 F.3d at 585-87.[5]

As defined by statute, an "enterprise" can be a "group of individuals associated in fact," 18 U.S.C. § 1959(b)(2), which can be proved by showing "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). This

---

[5] As relevant to Lee's capital sentence, the murder-in-aid-of-racketeering statute makes it a crime to commit murder "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a).

8

Court concluded that ample evidence established an association-in-fact

enterprise:

> First, the Kehoes, Lee, Lovelace, and others shared the common purpose of advancing the interests of the APR, with the eventual goal of forming a country for members of Christian Identity. Gloria Kehoe [Chevie Kehoe's mother] testified that Kehoe and other members of APR targeted robbery victims, including the Friedmans, based on their race or ethnicity. Kehoe and Lovelace used the proceeds from the Friedman robbery to buy property in Priest River, Idaho, where, ultimately, the group would congregate or live. Kehoe and Lee exchanged letters after their arrest signed with symbols associated with the APR. Lee bore a tattoo with the APR's symbol.
>
> Second, the Kehoes, Lee, Lovelace and others worked in concert to advance the APR's goals. Evidence showed that the members of the organization were stockpiling munitions, including armor-piercing bullets and a fire hydrant intended to disguise a bomb. Although the same combination of individuals did not participate in each and every criminal activity undertaken by the group, all members participated in criminal activities with the intent to advance the APR's goals. The members were consistent companions and recurrent cohorts. Evidence was presented that a member of the group, Jon Cox, was killed because he revealed information about the plans for future robberies. Although the jury did not convict Kehoe on this charge, the evidence likely contributed to the jury's finding that an enterprise existed.
>
> Finally, the APR's structure differs from that inherent in each act engaged in by members of the group. Evidence presented attested to a hierarchy within the APR. Kehoe founded and led the APR. He possessed and controlled the majority of the proceeds from the enterprise's illegal activities. He distributed the remainder to his cohorts.

9

Appellate Case: 19-3576    Page: 11    Date Filed: 12/07/2019 Entry ID: 4859446

*Kehoe*, 310 F.3d at 586-87. The Court also concluded that the evidence established that "Lee belonged to Kehoe's white supremacist movement and engaged in activities to further it." *Lee*, 374 F.3d at 647-48.

After the Supreme Court denied certiorari, *Lee v. United States*, 545 U.S. 1141 (2005), Lee moved for collateral relief under 28 U.S.C. § 2255, Dkt. 1118. The district court denied the motion. *Lee*, 2008 WL 4079315, at \*1. As relevant here, the court concluded that there "was overwhelming evidence of the existence of the RICO enterprise and [Lee's] involvement therein." *Id.* at \*35; *see also id.* at \*2-\*3 (describing the enterprise). This Court affirmed. *Lee*, 715 F.3d at 217.

## V.    The Present Motion

Lee now seeks authorization to file a successive § 2255 motion raising a claim that newly discovered establishes he is "innocent" because it shows there was no racketeering enterprise and therefore the murders he committed could not have been committed in aid of racketeering. According to Lee, the newly discovered evidence consists of statements from Kirby and Cheyne Kehoe—provided in the form of affidavits—that the "APR was a pipe dream of Chevie's" and a mere "fantasy" and there "was no 'organization'" and "Chevie committed his crimes for himself" for money. App. 56; *see* App. 48-

Appellate Case: 19-3576    Page: 12    Date Filed: 12/07/2019 Entry ID: 4859446

63. Kirby and Cheyne claim that they told all of this to federal prosecutors before Lee's trial. App. 56, 61-62.

Cheyne acknowledges that his affidavit is inconsistent with his testimony at Lee's trial but asserts that "the government misrepresented [his] words about events having to do with connections between Danny, my dad, Chevie, me, and the APR." App. 56. Kirby Kehoe similarly acknowledges that his affidavit contradicts explicit admissions he made when pleading guilty to a racketeering offense—*i.e.*, that he participated in a racketeering enterprise—but contends that he lied when he pleaded guilty because "government prosecutors threatened to give me 30 years in prison if I did not agree in my plea that an enterprise existed." App. 62.

Lee argues (Motion 14) that the information from *Kirby* and *Cheyne* is *Brady* material and should have been turned over to the defense before trial. And he contends (Motion 6-9, 14-20) that he can satisfy the stringent gatekeeping requirements for second or successive § 2255 motions because his motion "contain[s] . . . newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1).

11

## APPLICABLE LEGAL STANDARDS

A federal prisoner may collaterally attack his conviction by filing a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See generally United States v. Hayman*, 342 U.S. 205, 212-19 (1952) (explaining history of § 2255). Before 1996, statutory and judge-made rules placed limits on the filing of repetitive § 2255 motions. *See Baranski v. United States*, 880 F.3d 951, 955 (8th Cir.), *cert. denied*, 139 S. Ct. 266 (2018). In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220, which "imposed stricter limitations on the filing of second and successive § 2255 motions." *Baranski*, 880 F.3d at 955.

The gatekeeping provisions enacted in AEDPA provide as follows:

(h)  A second or successive motion must be certified as provided in [28 U.S.C. §] 2244 by a panel of the appropriate court of appeals to contain—

   (1)  newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

   (2)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Appellate Case: 19-3576   Page: 14   Date Filed: 12/07/2019 Entry ID: 4859446

28 U.S.C. § 2255(h). A court of appeals may authorize a defendant to file a successive § 2255 motion only if he or she "make[s] a prima facie showing that the application" satisfies one of these two gatekeeping requirements (compelling evidence of innocence or a new rule of constitutional law). 28 U.S.C. § 2244(b)(3)(C); *see Woods v. United States*, 805 F.3d 1152, 1153 (8th Cir. 2015) (per curiam).

When applying the gatekeeping provision for clear and convincing evidence of innocence, the court must consider "the evidence as a whole." 28 U.S.C. § 2255(h)(1). Courts have held that this standard "derived from pre-AEDPA decisions of the Supreme Court regarding the reviewability of abusive and procedurally defaulted federal habeas corpus claims," *United States v. MacDonald*, 641 F.3d 596, 610 (4th Cir. 2011), and requires courts to "consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under [evidentiary rules]," *id.* at 612 (citations omitted); *see United States v. Williams*, 790 F.3d 1059, 1077 (10th Cir. 2015). The court "must give due regard to any unreliability of the evidence" and "may have to make some credibility assessments." *MacDonald*, 641 F.3d at 612-13 (citations omitted). Courts have also held that a defendant may not rely on new evidence that he could have discovered earlier with due

13

diligence. *Herrera-Gomez v. United States*, 755 F.3d 142, 147 (2d Cir. 2014) (per curiam).

**ARGUMENT**

Lee fails to show he is entitled to file a second or successive § 2255 motion. He does not demonstrate that the new evidence provides clear and convincing evidence of his innocence or that he exercised sufficient diligence in obtaining the evidence. Lee's application must be denied.

**A.    Lee Does Not Present Clear and Convincing Evidence of His Innocence**

The affidavits from Kirby and Cheyne Kehoe do not establish by clear and convincing evidence that no reasonable juror would find that Lee committed murder in aid of racketeering. The affidavits specifically do not provide clear and convincing evidence that no reasonable juror would find a racketeering enterprise.

The existence of an enterprise has long been contested by Lee and Kehoe, to no avail. They challenged the evidence of an enterprise at trial, making it an emphasis of their defense. Tr. 6844-63 (Kehoe closing argument); *see* Tr. 6845 ("There's simply no evidence in this case from which you can conclude that there really was an organization."); Tr. 6848-49 ("Chevie Kehoe may have had an idea . . . . But he didn't have an entity."). The jury readily rejected the argument, however, and this Court rejected it again on appeal,

14

cataloguing some of the ample evidence establishing an enterprise. *Kehoe*, 310 F.3d at 586-87; *Lee*, 374 F.3d at 647-48; *see* also Gov't Response Brief, *United States v. Lee*, No. 02-2389 (8th Cir.) (filed Nov. 4, 2003) (Point X, describing the extensive evidence of an enterprise).

The affidavits from Kirby and Cheyne Kehoe do not undermine those determinations, let alone provide clear and convincing evidence the jury's determination was incorrect and no reasonable factfinder could make that finding. That is particularly the case when the affidavits are considered in light of the evidence as a whole, which includes Kirby's and Cheyne's prior admissions at Lee's trial and in Kirby's plea proceedings. No reasonable factfinder, when confronted with Kirby's and Cheyne's self-serving affidavits, executed more than 20 years after the fact, would ignore their previous sworn admissions that were nearly contemporaneous with the events at issue. Nor would the affidavits compel a factfinder to ignore all the other evidence of an enterprise, which, as the district judge who presided over the trial concluded, was "overwhelming." *Lee*, 2008 WL 4079315, at *35.

Even on their own terms, the affidavits do not establish compelling proof that would preclude a jury from finding a racketeering enterprise. The affidavits largely contain Kirby's and Cheyne's subjective views that there was no "organization." But a racketeering enterprise need not have a "hierarchical

Appellate Case: 19-3576    Page: 17    Date Filed: 12/07/2019 Entry ID: 4859446

structure" or a "chain of command"; "decisions may be made on an ad hoc basis and by any number of methods"; its members "need not have fixed roles"; and there is no requirement that the group have a "name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." *Boyle*, 556 U.S. at 948. The lay views of Kirby and Cheyne do not undermine the evidence at trial establishing the essential attributes of an association-in-fact enterprise.

A factfinder would also have to evaluate the affidavits in the context of Kirby's and Cheyne's repeated criminal activity and disdain for the law and government authority. In 2013, both men were sent to prison again on convictions for being felons in possession of firearms, in violation of 18 U.S.C. § 922(g). Kirby and Cheyne stockpiled weapons at a remote piece of land that Kirby acquired in northern Arizona. Kirby is still serving his 10-year term of prison. Cheyne served his 41-month sentence and recently violated a term of his supervised release. *See United States v. Kirby Kehoe & Cheyne Kehoe*, No. 13-CR-8223 (D. Ariz.).

In light of all the evidence as a whole, the affidavits do not meet the stringent standards for second or successive § 2255 motions based on newly discovered evidence of innocence. The affidavits are far from the type of clear and convincing evidence AEDPA requires.

16

**B.      Lee Fails to Demonstrate He Acted With Adequate Diligence**

The Court must also deny Lee's application because he "has failed to explain why he, who was represented by counsel at all relevant times, could not have discovered this evidence earlier." *Herrera-Gomez*, 755 F.3d at 147. Federal prisoners are "required to act with 'due diligence' in investigating and presenting their claims based on newly discovered evidence." *Id.* Lee provides no basis to conclude that he could not have obtained the affidavits from Kirby and Cheyne Kehoe at an earlier point in the last 20 years since his trial. After all, both men were in prison for large portions of that period and therefore were easy to find. In short, Lee "has not alleged, and the record does not suggest, that he could not have discovered this information through the exercise of due diligence prior to the filing of his first § 2255 motion in" 2006. *Id.* The application for permission to file a second or successive § 2255 motion must be denied.[6]

## CONCLUSION

The Court should reject Lee's application for permission to file a second or successive § 2255 motion.

---

[6] For similar reasons, Lee's motion would be untimely. As relevant here, a federal prisoner must file a § 2255 motion within a year of the "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

Appellate Case: 19-3576     Page: 19     Date Filed: 12/07/2019 Entry ID: 4859446

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

December 7, 2019

18

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on December 7, 2019. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

Appellate Case: 19-3576    Page: 21    Date Filed: 12/07/2019 Entry ID: 4859446